UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| CHRISTINE L. O'KEEFE, | ) |
| | ) |
|    Plaintiff(s), | ) |
| | ) |
|    vs. | )   Case No. 2:19-cv-00043 SRC |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
|    Defendant(s). | ) |

## Memorandum and Order

This matter comes before the Court on Plaintiff Christine L. O'Keefe's request for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying O'Keefe's application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. The Court affirms the Commissioner's decision.

**I.     Procedural history**

O'Keefe filed her application for benefits on April 12, 2016. Tr. 182. The Social Security Administration initially denied her application on May 11, 2016. Tr. 63, 66-70. O'Keefe asked for a hearing before an ALJ on May 31, 2016, and the ALJ held a hearing on June 19, 2018. Tr. 38. The ALJ denied O'Keefe's application in a decision dated August 20, 2018. Tr. 15-31. On April 18, 2019, the Appeals Council denied O'Keefe's request for review. Tr. 1-3. As such, the ALJ's decision stands as the final decision of the Commissioner.

**II.    Decision of the ALJ**

The ALJ determined that O'Keefe has not engaged in substantial gainful activity since May 15, 2014, the application date. Tr. 17. The ALJ found O'Keefe has severe impairments of

arthritis of the bilateral thumbs, disorder of the cervical and lumbar spine with radiculopathy, carpal tunnel syndrome, bilateral DeQuervain tenosynovitis, anxiety disorder, depression, and panic disorder. Tr. 17. The ALJ found O'Keefe's alleged impairments of dyslexia, a ganglion cyst on her right foot and ankle, and vision impairments nonsevere. Tr. 18. The ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 18.

After considering the entire record, the ALJ determined that O'Keefe had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations. Tr. 20. She can sit for a total of four hours in an eight-hour work day, but only for two hours at one time without interruption. *Id*. She can stand for a total of four hours in one day, but only for two hours at one time without interruption. *Id*. She can walk for a total of four hours in an eight-hour work day, but only for two hours at one time without interruption. *Id*. She can occasionally push or pull with the bilateral upper extremities. *Id*. She can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps or stairs. *Id*. She can occasionally balance, stoop, crouch, and kneel, but can never crawl. *Id*.

The ALJ went on to find that O'Keefe can handle objects. *Id*. Her gross manipulation is limited to frequently with the bilateral upper extremities. *Id*. She can finger objects – that is fine manipulations of items no smaller than the size of a paperclip – frequently with the bilateral upper extremities. *Id*. She should not use hazardous machinery and can have no exposure to unshielded moving mechanical parts. *Id*. She can never drive a motor vehicle as a part of the work function. *Id*. She should have no exposure to unprotected heights. *Id*. She can remember, understand, and carry out simple and routine instructions and tasks consistent with SVP levels 1 and 2 type jobs with no strict production quotas with an emphasis on a per shift rather than a per

hour basis.  *Id*.  She can have no interaction with the general public and occasional interaction with coworkers and supervisors after the first 30 days of employment with no tandem tasks with co-workers.  *Id*.

The ALJ found that O'Keefe cannot perform any past relevant work.  Tr. 28.  On the date she filed the application, O'Keefe was 47 years old, which is defined as a "younger individual age 18-49."  Tr. 29.  She subsequently changed age category to closely approaching advanced age.  *Id*.  O'Keefe has at least a high school education and can communicate in English.  *Id*.  After considering O'Keefe's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that O'Keefe can perform including router and retail price marker.  *Id*.  Thus, the ALJ concluded that O'Keefe "has not been under a disability."  Tr. 49.  O'Keefe appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

**III.    Legal standard**

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability.  20 C.F.R. § 416.920(a)(1).  First, the Commissioner considers the

3

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether "the claimant has a severe impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016).

Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908

(8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

## IV. Discussion

O'Keefe argues that substantial evidence does not support the ALJ's decision and offers two arguments for why the Court should remand. First, she contends the ALJ failed to give appropriate weight to the opinions of four physicians opining on O'Keefe's capacity to use her hands for reaching and gross or fine manipulation. Second, O'Keefe argues the ALJ did not consider her January 9, 2018 testimony because the Social Security Administration's counsel did not make a written transcript of the hearing available to the ALJ.

### A. The ALJ afforded appropriate weight to the medical opinions

#### 1. Legal standard for medical opinions

"The regulations require an ALJ to explain the weight given to medical opinions from treating, non-treating, and non-examining sources." *St. Cyre v. Saul*, No. 4:18 CV 627 DDN, 2019 WL 2716193, at *3 (E.D. Mo. June 28, 2019) (citing 20 C.F.R. §§ 404.1527, 416.927). ALJs must weigh all medical opinions, whether by treating or consultative examiners, based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) length of treatment relationship and frequency of examination, including nature and extent of the treatment relationship; (4) supportability of opinion with medical signs, laboratory findings, and explanation; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

6

Generally, ALJs should give a treating physician's opinion controlling weight, but they "may elect under certain circumstances not to give [the] opinion controlling weight." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). "Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). "Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand." *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004).

### 2. ALJs need not address every factor in 20 CFR § 404.1527

Before focusing on the individual opinions of the four physicians, the Court addresses O'Keefe's argument that the regulations require ALJs to address each factor listed in 20 C.F.R. § 404.1527 when assigning weight to medical opinions. Courts have repeatedly found that "[w]hile an ALJ must consider all of the factors set forth in 20 CFR § 404.1527(d), he need not explicitly address each of the factors." *Derda v. Astrue*, No. 4:09CV01847 AGF, 2011 WL 1304909, at *10 (E.D. Mo. Mar. 31, 2011) (collecting cases). Courts have rejected O'Keefe's contention that "an ALJ must articulate the consideration of these additional factors in the written decision," Doc. 14 at 5, as "beyond what the regulations and precedent require." *Pinilla v. Berryhill*, No. 4:17 CV 1445 DDN, 2018 WL 1912166, at *9 (E.D. Mo. Apr. 23, 2018). ALJs assigning weight to a medical opinion need not "cite specifically to the regulations but need only clarify whether he discounted the opinions and why." *Johnson v. Berryhill*, No. 4:16-CV-01114-NCC, 2017 WL 4280674, at *4 (E.D. Mo. Sept. 27, 2017) (citing *Kientzy v. Colvin*, No. 4:15 CV 707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016)).

Here, the ALJ explained that he considered the opinion evidence in accordance with the requirements of 20 CFR § 404.1527. Tr. 20. Therefore, in reviewing the ALJ's decision, the

7

Court does not assess whether the ALJ discussed each factor, but rather whether the ALJ articulated sufficient reasons for assigning the opinions little weight.

### 3.     Dwight Woiteshek, M.D.

The ALJ gave the opinions of Dr. Woiteshek little weight. The ALJ found that while Dr. Woiteshek opined that O'Keefe would be unable to work unless she underwent certain surgeries, he failed to specify what those treatments were.[1] Tr. 26. The ALJ further found that Dr. Woiteshek did not offer any functional opinions regarding O'Keefe's specific functionality other than his opinion that she could not work without some surgeries. *Id*. The ALJ determined that Dr. Woiteshek's statement that O'Keefe would be unable to work unless she had specific surgeries constituted a case-dispositive finding reserved only for the Commissioner. *Id*. Since only ALJs can make dispositive findings such as whether a claimant can work, the ALJ did not afford any special weight to Dr. Woiteshek's opinion that O'Keefe would be unable to work without certain surgeries. *Id*.

O'Keefe argues the ALJ failed to consider how the objective testing Dr. Woiteshek performed during his examination of O'Keefe informed and supported his opinion that she could not work. Doc. 14 at 6. Additionally, O'Keefe argues that by opining that O'Keefe could not work, Dr. Woiteshek must have also concluded that O'Keefe no longer had the ability to use her hands to the level required to perform her job as dog groomer. *Id*. at 7.

The ALJ "properly declined" to afford special weight to Dr. Woiteshek's opinion that O'Keefe could not return to work without certain surgeries. *Schwandt v. Berryhill*, 926 F.3d 1004, 1011 (8th Cir. 2019) (citing *House v. Astrue*, 500 F.3d 741, 744–45 (8th Cir. 2007); 20 C.F.R. § 404.1527(d)(2)). The Eight Circuit has explained that "a treating physician's opinion as

---

[1] As the ALJ recognized, the Court also notes that Dr. Woiteshek's treatment records appear incomplete. Tr. 21, 293-98.

to whether a patient is disabled or unable to work is not dispositive because these are 'issues reserved to the Commissioner and are not the type of opinions which receive controlling weight.'" *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (quoting *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010)).  Although O'Keefe may be correct that Dr. Woiteshek's conclusion that she could not return to work necessarily implied she lacked the hand capacity required to perform her job as a groomer, Dr. Woiteshek never specified how her hand functionally would impact her ability to work.  Thus, on the record before him, the ALJ reasonably determined that Dr. Woiteshek offered a conclusion on an issue reserved for the Commissioner.  Thus, the ALJ afforded proper weight to Dr. Woiteshek's opinion that O'Keefe could not return to work.

Moreover, even if the ALJ should have given Dr. Woiteshek's implied opinion significant weight, only a harmless error results because the ALJ also concluded that O'Keefe could no longer work as a dog groomer. Tr. 28-29.  "To show an error was not harmless, [a plaintiff] must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012).  Here, O'Keefe cannot make the required showing because the ALJ already agrees with the opinion she wishes received more weight.  As such, the Court finds it unnecessary to remand.

### 4. S. Vic Glogovac, M.D.

The ALJ also gave little weight to the opinion of Dr. Glogovac. Tr. 26.  Dr. Glogovac diagnosed O'Keefe with basilar thumb arthritis bilaterally and then opined that she could not work. *Id*.  The ALJ gave this opinion little weight because it "was a limited in time opinion pending treatment." *Id*.

9

O'Keefe argues that the ALJ failed to acknowledge that the treatments recommended by Dr. Glogovac, including "anti-inflammatories, possible steroid injections, small ring-type splits, . . . [and] ligament reconstruction tendon interpositional arthroplasty," describe the treatment that O'Keefe received from May 2014 through August 2017. Doc. 14 at 7.

"'Generally, the longer a treating source has treated [a claimant] and the more times [a claimant has] been seen by a treating source, the more weight' is given to the source's medical opinion." *Walton v. Astrue*, 664 F. Supp. 2d 1000, 1033 (E.D. Mo. 2009) (alterations in original); *see also Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007) ("In considering how much weight to give a treating physician's opinion, an ALJ must . . . consider the length of the treatment relationship and the frequency of examinations."). The regulations instruct ALJs to consider the treatment relationship and frequency of visits because the opinions of physicians who "have obtained a longitudinal picture of [the claimant's] impairment" should be afforded more weight. 20 C.F.R. § 416.927(c)(2)(i); *see also* 20 C.F.R. § 416.927(c)(2) (stating that ALJs should give more weight to treating sources because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained . . . from reports of individual examinations, such as consultative examinations or brief hospitalizations.").

Here, the ALJ afforded Dr. Glogovac's opinion little weight because he only examined her once before later treatments, which meant he could "not have obtained a longitudinal picture of [O'Keefe's] impairment." 20 C.F.R. § 416.927(c)(2)(i). Following his sole examination of O'Keefe on November 14, 2014, Dr. Glogovac diagnosed O'Keefe with basilar thumb joints bilaterally, recommended various treatments to treat that ailment, and found it "very unlikely she would be able to work as she is now." Tr. 304. Dr. Glogovac's statements simply reflect his

evaluation of O'Keefe's condition as of November 14, 2014. Nothing indicates that his diagnosis of her hands and his opinion that O'Keefe could not return to work accounted for the subsequent treatments O'Keefe received or even what the impact of the treatments he recommended would have on her. For example, Dr. Glogovac did not opine that O'Keefe could not work even if she received the treatments he recommended. Rather, he only stated that she could not work in her condition as of November 14, 2014 without regard for any potential subsequent treatments. For this reason, O'Keefe's argument that the ALJ failed to consider that Dr. Glogovac's recommended treatments described the future treatments O'Keefe received in assigning weight to Dr. Glogovac's opinion lacks merit. *See Davis v. Colvin*, No. CIV. 14-5014-JLV, 2015 WL 5554824, at *4 (D.S.D. Sept. 21, 2015) (declining to give controlling weight to a medical opinion issued before later treatments when there was no indication that the opinion accounted for the subsequent treatments). As such, the ALJ provided a good reason for assigning Dr. Glogovac's opinion little weight because a "limited in time opinion pending treatment" that presents a brief "snapshot" of O'Keefe's condition does not deserve more weight. *Davis*, 2015 WL 5554824, at *4 (finding the ALJ could give less weight to a medical opinion that did "not represent a longitudinal picture of [the claimant's impairment] but rather a snapshot taken near the outset of his treatment of her.")

    **5. Timothy Graven, D.O.**

 The ALJ gave little weight to the opinion of Dr. Graven. Tr. 26. Dr. Graven performed surgery on O'Keefe in August 2015 and instructed her after the surgery to not lift anything over 3 to 5 pounds until cleared by him. Tr. 26-27. The ALJ gave this opinion "little weight because it had no regard for subsequent treatments and events." Tr. 27.

11

Dr. Graven's opinion that O'Keefe shall not lift anything over 3 to 5 pounds constituted a temporary restriction issued immediately following surgery. Other courts have given temporary post-surgery restrictions little weight. *Daniel A. v. Saul*, No. 17-CV-4322 (ECW), 2019 WL 4306353, at *10 (D. Minn. Sept. 11, 2019); *see also Espinoza v. Berryhill*, No. 18-CV-00315-MEH, 2018 WL 3829956, at *8 (D. Colo. Aug. 13, 2018) ("I agree with the ALJ that limited and temporary restrictions generally receive less weight."). The ALJ recognized this opinion issued shortly after the surgery had little bearing on O'Keefe's capacity since it did not account for treatments and events that occurred following the surgery. Thus, with Dr. Graven's opinion limited to a specific time and unable to present a full picture of O'Keefe's capacity, the ALJ provided a good reason to afford it little weight.

### 6. Eddie Runde, M.D.

The ALJ gave most of Dr. Runde's opinions significant weight. Tr. 27. However, the ALJ gave very little weight to Dr. Runde's opinion that O'Keefe could never reach overhead with the bilateral upper extremities and could occasionally do all other reaching with the bilateral upper extremities. *Id*. The ALJ found Dr. Runde's opinion inconsistent with the record because it "ignores the significant successful medical treatment and improvement of the claimant's bilateral hands and bilateral wrists." *Id*. Next, the ALJ stated he could not find any other impairment that could support a limit on overall reaching to occasional. *Id*. The ALJ found that while there were references to rotator cuff repair in the record, nothing in the record indicated when that surgery occurred or whether the surgery successfully repaired her rotator cuff. *Id*. In the light of the above, the ALJ gave Dr. Runde's reaching opinion little weight.

O'Keefe argues that the ALJ's decision ignored that Dr. Runde's consideration of her medical history and his examination of her informed his reaching opinion. Doc. 14 at 8-9.

According to O'Keefe, her history of unsuccessful spinal surgery, bad neck, bone spurs in both thumbs, [and] arthritis" provided the reasoning for Dr. Runde's reaching opinion. *Id*. at 8.

"It is well established that an ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record." *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013–14 (8th Cir. 2000)); *see also Goff v. Barnhart*, 421 F.3d 785, 790–91 (8th Cir. 2005) (finding that inconsistency with other substantial evidence alone is a sufficient basis upon which an ALJ may discount a physician's opinion). Here, following a review of the record, the ALJ found Dr. Runde's opinion regarding O'Keefe's reaching capacity inconsistent with the other medical evidence. As a result, the ALJ gave the opinion little weight.

As described in the ALJ's decision, substantial medical evidence in the record supports finding that O'Keefe's bilateral extremities improved with significant medical treatment. For example, O'Keefe underwent bilateral carpal tunnel release surgery in 2014 and had a "good outcome in terms of relief of presenting symptoms." Tr. 22. O'Keefe visited a hand clinic in 2016 and formed full fists during her examination. Tr. 25. In 2017, O'Keefe underwent DeQuervain's release surgeries on both her wrists. Tr. 25-26. At a September 11, 2017 visit with Dr. Weber, just a few months before her visit with Dr. Runde, O'Keefe had experienced "significant improvements" in pain levels in both wrists following the surgeries and the physician allowed her to "begin to use her hands as tolerated with no restrictions." Tr. 25-26.

The ALJ's decision also described the treatment O'Keefe received affecting her neck. O'Keefe underwent surgery in August 2015 and February 2016. Tr. 24. A couple months following her February 2016 surgery, O'Keefe "reported having some achiness in the neck but no arm pains." *Id*. By November 2016, she had no neck pain or tenderness. *Id*. at 25. In sum,

13

the medical records prior to Dr. Runde's examination reflect that O'Keefe had no neck pain, significant improvement in her wrist pain, and could begin to use her hands without restrictions. O'Keefe notably does not point to any evidence in the record supporting Dr. Runde's reaching conclusions.

Even if this Court found substantial medical evidence in the record supporting Dr. Runde's reaching opinion, it cannot remand simply because it "would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion." *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (citing *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see also Goff*, 421 F.3d at 789 ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."). Rather, this Court must affirm if the ALJ's finding "falls within the available zone of choice[.]" *Schouten v. Berryhill*, 685 F. App'x 500, 501 (8th Cir. 2017). Here, for the reasons outlined above, the ALJ found inconsistencies between Dr. Runde's opinion regarding O'Keefe's reaching capacity and the other medical evidence in the record, and substantial evidence supports the ALJ's finding. Since such a finding "falls within the available zone of choice," the ALJ's permissibly afforded the opinion little weight.

In sum, the ALJ gave good reasons for the weight assigned to each of the physicians' medical opinions. Therefore, the Court affirms the ALJ's decision.

### B. Lack of written transcript presents no error

In her initial brief, O'Keefe argued that the Court should remand this case because the record did not include a written transcript of O'Keefe's first hearing in January 2018. Doc. 14 at 2-4. O'Keefe argued that without the transcript, this Court could not assess whether the ALJ

fairly considered O'Keefe's testimony. *Id*. at 3-4.  Counsel for the Social Security Administration supplemented the record in this case with the transcript from O'Keefe's first hearing, Doc. 15, mooting O'Keefe's argument on this basis.

In her reply brief, after the written transcript had been produced, O'Keefe proffered a new reason why this Court should remand.  O'Keefe suggests that without the written transcript, the ALJ did not have O'Keefe's testimony available to him in making his decision and therefore did not consider O'Keefe's testimony. Doc. 19 at 1-3.  O'Keefe contends "[t]here is nothing within the ALJ's written decision citing to O'Keefe's testimony with specifics," which illustrates he did not consider the testimony. Doc. 19 at 2.

Yet, contrary to O'Keefe's assertion, the ALJ's decision addresses O'Keefe's January 9, 2018 testimony with specificity. Tr. 21. The ALJ described O'Keefe's testimony regarding the difficulty she had gripping and holding objects due to her carpal tunnel and thumb problems. *Id*. After summarizing her January 9, 2018 testimony, the ALJ found that O'Keefe's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id*.  Thus, the ALJ clearly considered O'Keefe's testimony in reaching his decision, making O'Keefe's argument meritless.  As such, the Court finds no basis to remand.

Accordingly, the Court affirms the decision of the Commission and dismisses Plaintiff Christine L. O'Keefe's Complaint with prejudice.

So Ordered this 27th day of October 2020.

_____
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE